IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VARITALK, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: 07 C 1771 |
| v. | ) |
| | ) Suzanne B. Conlon, Judge |
| DAVE LAHOTI, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Varitalk, LLC sues Dave Lahoti, a California resident, and seven other defendants in a ten-count complaint alleging trademark infringement and related violations of federal and Illinois law. Lahoti moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), improper venue under Fed. R. Civ. P. 12(b)(3), and *forum non conveniens*. For the reasons set forth below, the motion is denied.

## **BACKGROUND**

The following facts are derived from the complaint and from the parties' pleadings. The court accepts all well-pleaded allegations as true, unless contradicted by the defendant's affidavits. *Nagel v. ADM Investor Servs.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998). Varitalk is a limited liability company organized under Delaware law with its principal place of business in Chicago, Illinois. Compl. at ¶ 11. Dave Lahoti is an individual residing in Tustin, California. *Id.* at ¶ 16. The remaining seven defendants also reside in or can be found in California. *Id.* at ¶¶ 16-51. Lahoti does business as Omegaworks.com and Crosspath.com. *Id.* at ¶¶ 20-21.

Varitalk developed a software technology that enables consumers to relay a pre-recorded audio message to another consumer using an Internet website. Compl. at ¶ 55. The message can be transmitted through phone calls, ringtones, mobile voicemail, or through the website itself. *Id.* Varitalk's product is unique because the pre-recorded messages are highly customized and indistinguishable from a real human voice. *Id.* On December 24, 2003, an application was filed with the U.S. Patent and Trademark Office to register the mark "Varitalk." *Id.* at ¶ 12. The application indicated the first use date was May 1, 2004 and the first use in commerce was June 16, 2004. *Id.* The mark was registered on October 4, 2005. *Id.*, Ex. A.

Varitalk uses its technology to develop custom marketing campaigns. Compl. at ¶¶ 56-57. The campaigns promote products, services, and entertainment, including movies and video games. *Id.* For example, Varitalk developed a marketing campaign to promote the movie "Snakes on a Plane" by creating pre-recorded messages featuring the voice of actor Samuel L. Jackson. *Id.* at ¶¶ 57-60. Consumers accessed the campaign at the website "snakesonaplane@varitalk.com." *Id.* There, the consumer could select a pre-recorded message and request that it be sent to another person's telephone number. *Id.* The Varitalk software telephones the consumer and relays the message. *Id.* Because of the high quality recording, the recipient is unaware the message is not a live call from Samuel L. Jackson. *Id.*

Lahoti registered the domain name "veritalk.com" in 2000. Compl. at ¶ 66; Lahoti Affidavit at ¶ 7. He created a website, and in 2002 added search engine services to the site. *Id.* The site presented advertisements and hyperlinks for other websites. *Id.* The technology for the search engine services was provided by third parties, including Google and Yahoo!. *Id.* at ¶ 11. Lahoti did not control the search results. *Id.* He did not sell goods, take orders, or enter into contracts over the

site. *Id.* at ¶¶ 13-14. He did not operate or maintain the site from Illinois, and never hired an Illinois company to perform services for the site. *Id.* at ¶¶ 15-16. Lahoti suspended operation of the site when he received notice of Varitalk's lawsuit. *Id.* at ¶¶ 7, 10.

Before suspension of the site, an Internet user who typed the domain name "www.veritalk.com" into an Internet browser was directed to Lahoti's website. Compl. at ¶ 66. The website home page featured the same or nearly the same words used on Varitalk's web page. *Id.* A user who typed "www.snakesonaplane.veritalk.com" into an Internet browser was directed to Lahoti's website. *Id.* at ¶ 71. The words "Snakes on a Plane," "Ringtones," "Cell Phones," "Samuel L Jackson," and "Snakes on a Plane Message" appeared multiple times on Lahoti's website. *Id.* at ¶ 69. The site also included hyperlinks to topics such as "Airline tickets," "People search," "Chat," and "Employment." *Id.* Lahoti's site invited users to "Make this your homepage" and "Bookmark this page." *Id.*

Varitalk's clients, consumers and vendors, including some in Illinois, were confused by Lahoti's domain name on a number of occasions. Compl. at ¶ 93. For example, clients and vendors attempted to email Varitalk employees, but typed in "veritalk" instead. *Id.* Consumers, including Illinois consumers, attempted to reach Varitalk's marketing campaign pages, but reached Lahoti's and the other defendants' web pages instead. *Id.* at ¶ 94. Varitalk alleges Lahoti seeks to profit from the confusion because he receives revenue for each user who visits his website. *Id.* at ¶ 95.

On January 4, 2007, Frederick Lowe, Chief Executive Officer of Varitalk, sent an email to Lahoti offering to pay $5,000 for the domain name "veritalk.com." Compl. at ¶ 74. He explained that he sought to purchase the domain name to avoid users mistakenly reaching Lahoti's website by accidentally typing "veritalk" instead of "varitalk." *Id.* at Exs. B2 and B5. Lahoti demanded

3

$65,000 for his domain name. *Id.* at ¶ 75. He also offered to assist Lowe in purchasing other similar domain names such as "varatalk.com" and "veratalk.com." *Id.* at ¶ 76. Lahoti submitted an affidavit stating that, prior to receiving Lowe's email, he had never heard of Varitalk, and did not intend to deceive consumers with his website. Lahoti Affidavit at ¶¶ 9, 18.

## DISCUSSION

### I. Personal Jurisdiction

#### A. Legal Standard

Varitalk bears the burden of proving the court has jurisdiction over Lahoti. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). The court resolves all factual disputes in Varitalk's favor. *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983). In addition to the jurisdictional allegations in the complaint, the court may consider matters outside the pleadings, such as affidavits submitted by the parties. *Id.* Varitalk need only make a *prima facie* showing of jurisdiction. *Michael J. Neuman & Assoc., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724-25 (7th Cir. 1994).

Varitalk must show that bringing Lahoti to court in this forum satisfies: (1) the requirements of due process, characterized as "traditional notions of fair play and substantial justice;" and (2) that he is amenable to service of process. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *United States v. De Ortiz*, 910 F.2d 376, 381-82 (7th Cir. 1990). Because this is a federal question case, the due process requirement is met if "each party ha[s] sufficient minimum contacts with the United States as a whole rather than [a] particular state." *Olsen v. Jenkens & Gilchrist*, 461 F. Supp. 2d 710, 722 (N.D. Ill. 2006) (citing *De Ortiz*, 910 F.2d at 382). Fed. R. Civ. P. 4(k) governs the court's inquiry regarding service of process. *Id.* Rule 4(k) provides that service is effective to

establish jurisdiction over a defendant "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." FED. R. CIV. P. 4(k)(1)(A) and (D).

The Illinois long-arm statute contains a "catch-all" provision that "permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 714-15 (7th Cir. 2002) (citing 735 ILCS 5/2-209(c)); *see also Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000). There is no "operative difference" between the limits imposed by the Illinois constitution and the federal limits on personal jurisdiction. *Id.* at 715 (citing *RAR*, 107 F.3d at 1276). Accordingly, personal jurisdiction analysis collapses into a federal due process inquiry. *Id.* at 715-16; *Watchworks, Inc. v. Total Time, Inc.*, No. 01 C 5711, 2002 WL 424631, at *4 (N.D. Ill. Mar. 19, 2002) (Lefkow, J.). A finding of personal jurisdiction therefore requires the following:

> [T]he defendant must have minimum contacts with the forum state such that the maintenance of the suit does not offend fair play and substantial justice. Those contacts may not be fortuitous. Instead, the defendant must have purposefully established minimum contacts within the forum State before personal jurisdiction will be found to be reasonable and fair. Crucial to the minimum contacts analysis is a showing that the defendant should reasonably anticipate being haled into court [in the forum State], because the defendant has purposefully avail[ed] itself of the privilege of conducting activities there.

*Id.* at 716 (internal quotations and citations omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985); *International Shoe*, 326 U.S. at 316.

The federal test is met by demonstrating "general" or "specific" personal jurisdiction. *Id.* at 713. General jurisdiction exists if the defendant has "continuous and systematic general business

contacts" with the forum state. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003). In determining specific jurisdiction, the court asks whether it is "fundamentally fair" to require the defendant to submit to jurisdiction with "respect to this litigation." *Id.* at 780 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). The most important factor is foreseeability; "that is, whether the defendant could have anticipated being haled into the courts of the state." *Olsen*, 461 F. Supp. 2d at 723. Purposeful availment of the privileges of conducting activities in the state makes the defendant amenable to jurisdiction. *Purdue*, 338 F.3d at 780. In making the determination, courts examine whether a defendant has deliberately engaged in significant activities or created continuing obligations within the forum state. *Id.* at 780-81.

### B. General Jurisdiction

Varitalk contends Lahoti is subject to general jurisdiction based on his Internet website and his non-website activities, but declines to brief the issue because "a conclusion of specific jurisdiction is more compelling and obviates the need for argument as to general jurisdiction." Pl.'s Resp. at 3 n.2. Varitalk does not allege Lahoti has continuous and systematic general business contacts with Illinois. *See* Compl. at ¶ 3. Varitalk thus waived any general jurisdiction argument, and the court focuses exclusively on specific jurisdiction. *RAR*, 107 F.3d at 1277. Even if Varitalk had not waived the argument, Varitalk fails to make a *prima facie* showing of general jurisdiction. *Neuman & Assoc.*, 15 F.3d at 724-25.

### C. Specific Jurisdiction

Varitalk argues this court has specific jurisdiction over Lahoti because his website was interactive, was likely used by Illinois consumers, and advertised Illinois companies. Varitalk also asserts specific jurisdiction is supported by Lahoti's email correspondence with Varitalk in Chicago

6

about the sale of his domain name. Lahoti argues this court lacks specific jurisdiction because he did not engage in any conduct directed toward Illinois or Varitalk. Even if he engaged in conduct directed toward Illinois, Lahoti contends Varitalk's claims do not arise from his conduct, and assertion of jurisdiction would be unreasonable.

### 1. Minimum Contacts

#### a. Email Correspondence

According to Varitalk, Lahoti purposefully entered Illinois by sending email messages to Varitalk's Chief Executive Officer, Frederick Lowe, in Chicago. Lahoti argues his email messages to Lowe are insufficient to confer specific jurisdiction. Email negotiations with a party in the forum state may in some cases be sufficient to confer jurisdiction. *LFG v. Zapata Corp.*, 78 F. Supp. 2d 731, 738 (N.D. Ill. 1999). However, Lahoti's email messages to Varitalk regarding the sale of his domain name do not purposefully establish minimum contacts within Illinois. Varitalk (through Lowe) initiated the email correspondence, not Lahoti. Lahoti did not know Varitalk's email messages originated in Illinois. There were few emails, and no real negotiation. Personal jurisdiction would not be fundamentally fair because Lahoti could not reasonably anticipate being haled into court in Illinois based on his email messages to Lowe.

#### b. Lahoti's Internet Site

Lahoti argues his website was "passive," and operation of a passive website is insufficient to establish personal jurisdiction. In *Jennings v. AC Hydraulic A/S*, the Seventh Circuit held that "maintenance of a passive website does not support the exercise of personal jurisdiction over that defendant in a particular forum just because the website can be accessed there." 383 F.3d 546, 550 (7th Cir. 2004). AC Hydraulic, a Danish company, maintained a website accessible in the United

7

States. *Id.* at 548. The site provided information and descriptions of AC Hydraulic's product lines, but consumers could not order products through the site. *Id.* The court held that jurisdiction based on a passive Internet site like AC Hyrdraulic's would create universal personal jurisdiction due to the unlimited access to websites across the country, and would eviscerate constitutional limits on a state's power to exercise jurisdiction over nonresidents. *Id.* at 550. However, the court acknowledged that operation of an "interactive website" may subject a defendant to the exercise of personal jurisdiction. *Id.* at 549.

A "sliding scale" approach may be used to determine the level of interactivity of an Internet website for jurisdictional purposes. *Neomedia Technologies, Inc. v. Airclic, Inc.*, No. 04 C 566, 2004 WL 848181, at *3 (N.D. Ill. Apr. 16, 2004) (Kocoras, C.J.) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997)). The approach classifies Internet activity into three categories. *Id.* An "active" website is one through which the defendant transacts business, for example entering into contracts with users for the sale of goods. *Id.* Personal jurisdiction exists if a defendant operates an active website. *Id.* At the opposite end of the scale is a "passive" website, merely posting information without facilitating communication or interaction. *Id.* Personal jurisdiction does not exist over a defendant who operates a passive website. *Id.; see also Jennings*, 383 F.3d at 550. Jurisdiction potentially exists over a defendant who operates a "hybrid" website through which a user can exchange information with a defendant. *Id.* In determining whether to exercise jurisdiction over a defendant who operates a website falling into this middle category, the court examines the "interactivity and commercial nature of the exchange of information that occurs on the website." *Id.* (quoting *Zippo*, 952 F. Supp. at 1124).

Lahoti characterizes his website as "passive." However, it is best described as an Internet portal.

> Portals are "super" web sites that provide a wide variety of services, aiming to be "one-stop shops" for internet needs. Portals typically offer access to internet search engines, e-mail accounts, discussion groups, web sites categorized by topic, and directories, among other things-all free to the user. Portals provide the services at no cost to internet users, and they generate their income by selling online advertising space.

*LFG*, 78 F. Supp. 2d at 736 . Portals are not passive. *Id.* Nor are they active. *Neomedia*, 2004 WL 848181, at *6 (a portal's inclusion of hyperlinks does not transform it into an active website). They do not fit well within the sliding scale framework, and few cases have addressed personal jurisdiction in relation to an Internet portal. *LFG*, 78 F. Supp. 2d at 736. Portals fall into the middle ground of the sliding scale because they are designed for user interaction and their success hinges on the number of users interacting with the site. *Id.* at 737. Although they do not offer products or goods for sale, portals are themselves a form of product or service. *Neomedia*, 2004 WL 848181, at *5.

Lahoti's portal website was interactive and commercial in nature. It provided access to search engines. Users could click on hyperlinks for travel, finance, business, home and entertainment resources. For example, under the topic "Business," a user could click on a link to "Reorder Checks." Compl. at ¶ 69. Under "Finance," a user could clink on links for a "Free credit report" or "Credit Card Application." *Id.* At the top of the site were the words, "What you need, when you need it," with links enabling a user to "Make this your homepage" or "Bookmark this page." *Id.* There was also a link to "Chat." *Id.* The site invited users to interact for commercial purposes. Lahoti earned revenue based on the number of users who visited his website using

9

"cookies" and other Internet marketing devices. *Id.* at ¶ 95. He earned revenue when users clicked on the hyperlinks or made a purchase from a website referenced on his website. *Id.*

Lahoti's portal website was commercial and had a high degree of interactivity. *Neomedia*, 2004 WL 848181, at *5. Lahoti argues he could not predict that any person in Illinois would access his site. Yet his site included links to stores located in or doing substantial business in Illinois, and he must have anticipated that Illinois users would visit his site. Citing *Neomedia*, Lahoti argues hyperlinks to companies located in Illinois are insufficient to establish personal jurisdiction. *Id.* His reliance on *Neomedia* is misplaced. *Neomedia* held that a hyperlink to a *non-forum* company did not meet due process requirements. *Id.* ("the key distinction for jurisdictional purposes is that AESI is an Indiana company"). Lahoti's interactive portal is itself a product or service. *Id.* He could reasonably anticipate being haled into court in Illinois on the basis of his site.

Lahoti's site created confusion among Illinois companies, including Varitalk's client, Chicago-based advertising firm Weber Shandwick. Compl. at ¶¶ 93-94, Ex. U. Varitalk alleges Lahoti intentionally created confusion to direct users to his website. *Id.* at ¶ 95. He profited from each viewer who visited his website. *Id.* Varitalk does not provide a specific number of Illinois users who visited Lahoti's website. However, its Snakes on a Plane campaign was visited by 11.5 million consumers over a 26 day period. *Id.* at ¶ 58. Varitalk notes that over 9,000 different consumers have accessed its Internet campaigns from within Illinois since June 2006. Pl. Resp. at 6. It is reasonable to infer, based on the confusion caused by the similarity in domain names, that a number of Illinois users attempting to reach Varitalk's website reached Lahoti's instead.

Lahoti argues he did not target Illinois users, and did not intend to cause confusion or deceive users. Lahoti Affidavit at ¶ 18. However, he does not dispute that confusion occurred and some

users reached his site when they meant to reach Varitalk's. Nor does he refute Varitalk's allegation that some of these users were in Illinois. Varitalk alleges it was injured by user confusion, which resulted from Lahoti's tortious acts. Its injury was suffered in Illinois, where Illinois users were allegedly deceived into contacting Lahoti's site instead of Varitalk's. *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997) (tort occurs where the injury occurs; "the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor"). Varitalk may sue Lahoti in Illinois, the state where it was injured, even though Lahoti operated his site from California. *Calder v. Jones*, 465 U.S. 783, 790 (1984); *Janmark*, 132 F.3d at 1202.

### 2. Varitalk's Claims Arise from or Relate to Lahoti's Illinois Contacts

Lahoti contends even if his activities were directed toward Illinois, this court lacks specific jurisdiction because Varitalk cannot show that its claims arise out of or relate to his forum-related activities. *Burger King*, 471 U.S. at 472 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Lahoti's argument is unpersuasive. Varitalk's trademark infringement, dilution and unfair competition claims are based on the similarity of terms found in Varitalk's and Lahoti's websites. Varitalk alleges Lahoti's site caused confusion for users, including some in Illinois, who reached his site intending to reach Varitalk's site. Varitalk's claims arise out of or relate to Lahoti's Internet activities in Illinois. *See LFG*, 78 F. Supp. 2d at 738 (plaintiff's claims arose out of terms used on defendant's website that caused user confusion).

### 3. Jurisdiction is Reasonable

Lahoti argues that specific jurisdiction in Illinois is unreasonable. To defeat jurisdiction, he must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. The court must consider Lahoti's

11

contacts in light of other considerations to determine if personal jurisdiction comports with "fair play and substantial justice." *Id.* at 476 (quoting *International Shoe*, 326 U.S. at 320). The court may evaluate factors such as the burden on Lahoti of litigating in Illinois, Illinois' interest in adjudicating the dispute, Varitalk's interest in convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of Varitalk's claims, and the shared interest of the several states in furthering substantive social policies. *Id.* at 477.

Lahoti argues litigating in Illinois is a burden and an inconvenience because he resides in California. However, even if the case were adjudicated in California, some travel to Illinois would likely be necessary because a number of witnesses are presumably located in Illinois. This consideration may be resolved without finding jurisdiction unconstitutional. *Burger King*, 471 U.S. at 477 ("a defendant claiming substantial inconvenience may seek a change of venue"). Varitalk has an interest in adjudicating the dispute in Illinois. Its principle place of business is in Chicago, and much of its injury likely occurred in Illinois. *Janmark*, 132 F.3d at 1202; *LFG*, 78 F. Supp. at 739. Illinois has a strong interest in adjudicating disputes involving the alleged infringement of an Illinois company's trademark. *LFG*, 78 F. Supp. at 739. The dispute involves Illinois consumers; at least one of Varitalk's Illinois clients contacted Lahoti's site attempting to contact Varitalk. These factors weigh in favor of exercising personal jurisdiction over Lahoti in Illinois.

## II.     Improper Venue

Lahoti argues the case should be dismissed for improper venue. FED. R. CIV. P. 12(b)(3). Varitalk bears the burden of establishing that venue is proper. *Nagel*, 995 F. Supp. at 843. The court must resolve factual conflicts in the parties' submissions and draw any reasonable inferences in Varitalk's favor. *Id.* at 843.

12

Venue is proper in a civil action based on federal question jurisdiction in a judicial district where any defendant resides, in which a substantial part of the events or omissions giving rise to the claim occurred, or where any defendant may be found, if there is no other district in which the action may be brought. 28 U.S.C. § 1391. None of the defendants reside in Illinois. Varitalk alleges venue is proper in Illinois because a substantial part of the events or omissions giving rise to its claims occurred in Illinois. Compl. at ¶ 10. Varitalk alleges Illinois consumers were confused by Lahoti's site, and that at least one Varitalk client in Illinois contacted Lahoti's site intending to contact Varitalk. Venue is proper in the Northern District of Illinois.

### III. *Forum Non Conveniens*

Lahoti argues the action should be dismissed for *forum non conveniens*. The doctrine is inapplicable to the facts of this case. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1190 (2007) ("[t]he common law doctrine of *forum non conveniens* has continuing application [in federal courts] only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best" (internal quotation and citation omitted)). The doctrine in a non-foreign context has been replaced by the transfer of venue statute, 28 U.S.C. § 1404(a). *Id.* at 1190-91; *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718-19 (7th Cir. 2002). Lahoti did not move for transfer of venue under § 1404(a).

## CONCLUSION

For the reasons stated above, Lahoti's motion to dismiss the complaint is denied.

ENTER:

_Suzanne B. Conlon_
Suzanne B. Conlon
United States District Judge

May 30, 2007